AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

```
FILED
JUL 0 5 2018
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                          DEPUTY
```

In the Matter of the Search of                    )
*(Briefly describe the property to be searched*    )
*or identify the person by name and address)*      )   Case No.  **18MJ3859**
                                                   )
Facebook Account belonging to Sal Acosta,          )
https://www.facebook.com/sal.acosta.39?            )
pnref=friends.search                               )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the       Southern       District of       California       , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, U.S.C. §§ 952, 960 and 963 | Conspiracy to Import and Importing Controlled Substances |

The application is based on these facts:
Refer to attached affidavit of Special Agent Alexander Askey

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Alexander Askey, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7/5/18

*Judge's signature*

City and state: San Diego, CA         Honorable Bernard G. Skomal, US Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## APPLICATION FOR SEARCH WARRANT

I, Alexander R. Askey, being duly sworn, hereby depose and state as follows:

1. I am a Special Agent of the Department of Homeland Security, U.S. Immigration and Customs Enforcement, Homeland Security Investigations, and have been so employed since October 2016. My current assignment is to a narcotics smuggling group.

2. I am a "law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516. I have conducted criminal investigations of or relating to narcotics smuggling and other crimes. I have received basic training in conducting narcotics smuggling investigations and the enforcement of numerous Immigration and Customs laws within the United States. My training has also included the use of cellular and digital telephones and other social networking sites used by narcotics smugglers in the normal course of their illicit activities. I graduated the twelve-week Criminal Investigator Training Program and the fifteen-week Homeland Security Investigations Special Agent Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia. Prior to my employment with HSI, I was employed as a police officer with the City of Alexandria, Virginia, from December 2011 to August 2016. I also graduated from the 20-week Basic Law Enforcement School at the Northern Virginia Criminal Justice Training Academy, located in Ashburn, Virginia. I have been cross-designated by the United States Drug Enforcement Administration to conduct narcotics investigations and enforce the provisions of the Federal Controlled Substance Act, pursuant to Title 21, United States

1 Code since that time. I graduated in May 2011 from the University of
2 Pittsburgh, with a bachelor's degree in administration of justice. I
3 graduated in July 2015 from Troy University, with a master's degree in
4 public administration.

5   3. This affidavit is in support of an application by the United
6 States of America for a search warrant for Facebook account named: Sal
7 Acosta, which is related to the following Facebook account:

8   https://www.facebook.com/sal.acosta.39?pnref=friends.search
9 as described in Attachment A, ("hereinafter SUBJECT ACCOUNT"), from
10 June 1, 2017, to October 1, 2017, for items that constitute evidence of
11 violations of federal criminal law, namely, Title 21, United States
12 Code, Sections 952, 960, and 963, Conspiracy to Import and Importation
13 of a Controlled Substance, as described in Attachment B.

14   4. Based upon my training and experience as a Special Agent, and
15 consultations with law enforcement officers experienced in narcotics
16 trafficking investigations, and all the facts and opinions set forth in
17 this affidavit, I submit the following:

18   a. Drug traffickers will use Facebook because it allows for
19   instant access to messages.

20   b. Drug traffickers will use Facebook because they are able to
21   actively monitor the progress of their illegal cargo while the
22   conveyance is in transit.

23   c. Drug traffickers and their accomplices will use Facebook
24   because they can easily arrange and/or determine what time their
25   illegal cargo will arrive at predetermined locations.

26   d. Drug traffickers will use Facebook to direct drivers to
27   synchronize an exact drop off and/or pick up time of their illegal
28   cargo.

  e. Drug traffickers will use Facebook to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

  f. Drug traffickers and their co-conspirators often use Facebook to communicate with load drivers who transport their narcotics and/or drug proceeds.

  g. The use of Facebook by conspirators or drug traffickers tends to generate evidence that is stored with Facebook, including, but not limited to emails, text messages, photographs, audio files, videos, chat logs, address book entries, IP addresses, social network data, and location data.

  5. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that Facebook can and often does contain electronic records, contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored with Facebook. Specifically, I know based upon my training, education, and experience investigating narcotics traffickers that searches of facebook yields evidence:

  a. Communications, records, and attachments tending to discuss or establish offering, discussing, distributing or describing the bringing in, transporting, moving, encouraging, inducing, and/or concealing from detection of federally controlled substances, or the attempt or conspiracy to do such acts, in violation of 21 U.S.C. §§ 952, 960, and 963;

AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT    3    Email Search Protocol_SLF_041813

b.  Communications, records, and attachments tending to identify Salvador Acosta and any co-conspirators involved in the activities in (a) above;

c.  All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers tending to identify Salvador Acosta and any co-conspirators involved in the activities in (a) above;

d.  All past and present lists of friends created by the account tending to identify Salvador Acosta any co-conspirators involved in the activities in (a) above;

e.  All Photoprints, including all photos uploaded by that user ID and all photos uploaded by any user that have that user tagged in them to include EXIF data tending to identify evidence of offering, discussing, distributing or describing the bringing in, transporting, moving, encouraging, inducing, and/or concealing from detection of federally controlled substances, or the attempt or conspiracy to do such acts, in violation of 21 U.S.C. §§ 952, 960, and 963;

f.  All "check ins" and other location information tending to identify evidence of offering, discussing, distributing or describing the bringing in, transporting, moving, encouraging, inducing, and/or concealing from detection of federally controlled substances, or the attempt or conspiracy to do such acts, in violation of 21 U.S.C. §§ 952, 960, and 963;

  g. All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests tending to identify evidence of offering, discussing, distributing or describing the bringing in, transporting, moving, encouraging, inducing, and/or concealing from detection of federally controlled substances, or the attempt or conspiracy to do such acts, in violation of 21 U.S.C. §§ 952, 960, and 963;

  h. All email communications to include but not limited to; sent, received, deleted, drafted, and stored in the accounts listed above tending to identify evidence of offering, discussing, distributing or describing the bringing in, transporting, moving, encouraging, inducing, and/or concealing from detection of federally controlled substances, or the attempt or conspiracy to do such acts, in violation of 21 U.S.C. §§ 952, 960, and 963; and

  i. Communications, records, and attachments that provide context to any communications described above, such as electronic mail sent or received in temporal proximity to any relevant electronic mail and any electronic mail tending to identify users of the subject accounts.

  6. The facts set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; interviews of victims; my review of documents and computer records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of

establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

### STATEMENT OF PROBABLE CAUSE

7. On September 15, 2017, at approximately 4:30 a.m., Salvador ACOSTA entered the United States from Mexico through the San Ysidro Port of Entry, San Diego, California. ACOSTA was the driver and sole occupant of a 2008 Toyota Prius, bearing California license plate 6BNG709.

8. In primary, a Customs and Border Protection Officer ("CBPO") encountered ACOSTA. The CBPO conducted an inspection of the rear cargo area of the ACOSTA's Toyota Prius. When a CBPO opened the rear cargo door of the Toyota Prius, the CBPO smelled the odor of soap. The CBPO opened a factory compartment inside the rear cargo area of the Toyota Prius and discovered two plastic bags. When a CBPO opened the bags, he discovered plastic-wrapped packages. The CBPO placed ACOSTA in handcuffs and requested assistance from a Canine Enforcement Officer ("CEO").

9. A CBPO assigned to secondary lot conducted a more thorough inspection after being told of a dog alert and Z-Portal findings revealing anomalies in the trunk area of the Prius. The CBPO observed four black plastic bags in a factory compartment in the rear cargo area of the Toyota Prius. The CBPO opened the bags and observed that they contained a total of 15 plastic-wrapped packages. The packages contained a white powdery substance that field tested positive for the characteristics of fentanyl, a schedule II controlled substance. The packages had a total weight of 15.78 kilograms (34.80 pounds)..

10. On October 11, 2017, an Indictment was filed in the Southern District of California charging ACOSTA with importation of fentanyl, in violation of 21 U.S.C. §§ 952 and 960.

11. On December 5, 2017, I obtained two federal search warrants - 17MJ4587 and 17MJ4588 - for two Apple iPhones found in ACOSTA'S possession when he was arrested on September 15, 2017. The HSI Computer Forensics group extracted the data from the cellular telephones and placed the contents on a disc. The contents of the disc are viewed through Cellebrite Universal Forensic Extraction Device ("UFED") Physical Analyzer software. The software organizes cellular telephone data software into sections such as contacts, chats, pictures, and messages, etc.

12. Between January 2018 and February 2018, I reviewed the contents of ACOSTA's Apple iPhones. I clicked on the "Chats" section of the software report. When observing the conversation between ACOSTA and "Alberto", the UFED software indicated that the medium for the conversation was Facebook Messenger. Additionally, the UFED software provides the Facebook names of the parties that are participating in the conversation. In the conversation between ACOSTA and "Alberto", ACOSTA's Facebook name is listed as "Sal Acosta". HSI Special Agents found ACOSTA's Facebook account by first searching for "Alberto Aldana", a contact in ACOSTA's cellular telephone. A search for this name yielded an account for Alberto Aldana, an individual who resides in Tijuana, Baja California, Mexico. While looking at Aldana's account, I clicked on the "Friends" section in order to see who Aldana was friends with on Facebook. While looking at the "Friends" section, I observed an account named "Sal Acosta". I clicked on this account, which led to the hyper-link: https://www.facebook.com/sal.acosta.39?pnref=friends.search. This indicates that "Sal Acosta" is the name that ACOSTA utilizes for his Facebook account.

13. During the course of analyzing messages from the Facebook Messenger section of ACOSTA's Facebook account, I observed a conversation between the ACOSTA and another individual listed as Alberto Aldana (hereinafter referred to as "Alberto"), whose identity is not yet known to the United States. This conversation between ACOSTA and Alberto occurred between July 16, 2017, to September 14, 2017.

14. I observed a portion of their conversation, dated August 18, 2017, which contained the following Facebook messages:

Alberto: Uncle can buy me about 6 boats

Alberto: That's what they sell in orallz

Alberto: They cost as 3 dlls

ACOSTA: OK no problem

15. Based on my training, experience, and consultation with other state and federal law enforcement officer, I have probable cause to believe that the term "boat", as used by drug traffickers, refers to approximately 1,000 pills. A "boat" typically and frequently refers to Methylenedioxymethamphetamine, a controlled substance commonly referred to as ecstasy. As such, "6 boats" would refer to approximately 6,000 pills.

16. I conducted further analysis of the ACOSTA's Apple iPhones, and observed "Alberto Aldana" listed as a contact in ACOSTA's personal iPhone. Further analysis showed approximately 13 phone calls between "Alberto Aldana" and ACOSTA between 4:53 P.M. and 10:15 P.M. on September 14, 2017. This time frame is the evening before the day of ACOSTA's arrest, which occurred in the early morning hours of September 15, 2017.

17. Based upon my experience and investigation in this case, I believe there is probable cause to believe that the SUBJECT ACCOUNT

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT

8

Email Search Protocol_SLF_041813

contains evidence of violations of Title 21, United States Code, Sections 952, 960, and 963; Importation of a Controlled Substance. Specifically, I believe that Defendant, as well as other persons known and unknown, were involved in an ongoing conspiracy to import cocaine or some other prohibited drugs. Probable cause also exists to believe that Defendant used the TARGET DEVICES to coordinate with co-conspirators, regarding the importation and delivery of the methamphetamine and cocaine, and to otherwise further this conspiracy both inside and outside the United States.

### PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

18. The United States has not attempted to obtain this data by other means. However, the United States has executed search warrants on Salvador ACOSTA's cellular phones, which showcased Facebook messages between ACOSTA and parties that are known and unknown to the United States.

### Facebook

19. Facebook is an Internet company that, among other things, provides electronic communication services to its subscribers. Facebook's electronic messaging service allows its subscribers to exchange electronic communications with others through the Internet. Facebook subscribers access Facebook's services through the Internet.

20. Subscribers to Facebook use screen names during communications with others. The screen names may or may not identify the real name of the person using a particular screen name. Although Facebook requires users to subscribe for a free Facebook account, Facebook does not verify the information provided by the subscriber for its free services.

21. At the creation of a Facebook account and for each subsequent access to the account, Facebook logs the Internet Protocol ("IP") address

of the computer accessing the account. An IP address is a unique address through which a computer connects to the Internet. IP addresses are leased to businesses and individuals by Internet Service Providers. Obtaining the IP addresses that have accessed a particular Facebook account often identifies the Internet Service Provider that owns and has leased that address to its customer. Subscriber information for that customer then can be obtained using appropriate legal process.

## PROCEDURES FOR ELECTRONICALLY STORED INFORMATION

22. Federal agents and investigative support personnel are trained and experienced in identifying communications relevant to the crimes under investigation. The personnel of Facebook are not. It would be inappropriate and impractical for federal agents to search the vast computer network of Facebook for the relevant accounts and then to analyze the contents of those accounts on the premises of Facebook. The impact on Facebook's business would be disruptive and severe.

23. Therefore, I request authority to seize all content, including electronic mail and attachments, stored instant messages, stored voice messages, photographs, and any other content from the Facebook account, as described in Attachment B. In order to accomplish the objective of the search warrant with a minimum of interference with the business activities of Facebook, to protect the privacy of ISP subscribers whose accounts are not authorized to be searched, and to effectively pursue this investigation, Homeland Security Investigations seeks authorization to allow Facebook to make a digital copy of the entire contents of the account(s) subject to seizure. That copy will be provided to me or to any authorized federal agent. The copy will be imaged and the image will then be analyzed to identify communications and other electronic records subject to seizure pursuant to Attachment B. Relevant electronic

records will be copied to separate media. The original media will be sealed and maintained to establish authenticity, if necessary.

24. Analyzing the data to be provided by Facebook may require special technical skills, equipment, and software. It may also be very time-consuming. Searching by keywords, for example, often yields many thousands of "hits," each of which must be reviewed in its context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant "hit" does not end the review process. Keyword searches do not capture misspelled words, reveal the use of coded language, or account for slang. Keyword searches are further limited when electronic records are in or use foreign languages. Certain file formats also do not lend themselves to keyword searches. Keywords search text. Many common electronic mail, database and spreadsheet applications, which files may have been attached to electronic mail, do not store data as searchable text. Instead, such data is saved in a proprietary non-text format. And, as the volume of storage allotted by service providers increases, the time it takes to properly analyze recovered data increases dramatically. The ISPs do not always organize the electronic files they provide chronologically, which makes review even more time consuming and may also require the examiner to review each page or record for responsive material.

25. Based on the foregoing, searching the recovered data for the information subject to seizure pursuant to this warrant may require a range of data analysis techniques and may take weeks or even months. Keywords need to be modified continuously based upon the results obtained and, depending on the organization, format, and language of the records provided by the ISP, examiners may need to review each record to determine if it is responsive to Attachment B. The personnel conducting

the examination will complete the analysis within ninety (90) days of receipt of the data from the service provider, absent further application to this court.

26. Based upon my experience and training, and the experience and training of other agents with whom I have communicated, it is necessary to review and seize all electronic messages that identify any users of the subject account(s) and any electronic messages sent or received in temporal proximity to incriminating electronic messages that provide context to the incriminating messages.

27. All forensic analysis of the imaged data will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

## CONCLUSION

28. Based on the foregoing, there is probable cause to believe that the items identified in Attachment B have been used in the commission of a crime and constitute evidence of violations of Title 21, United States Code, §§ 952, 960, and 963 and will be found on the premises to be searched as provided in Attachment A.

_____
Alexander Askey
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this __5__ day of July 2018.

_____
HONORABLE BERNARD G. SKOMAL
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

## DESCRIPTION OF LOCATIONS TO BE SEARCHED
## (In Violation of Title 21, U.S.C., Sections 952, 960, and 963)

Facebook, Inc. is an Internet service provider with its primary computer information systems and other electronic communications and storage systems, records and data located at 1601 Willow Road, Menlo Park, CA 94025.

**ATTACHMENT B**

**I.  Service of Warrant**

The officer executing the warrant shall permit Facebook, Inc., as custodian of the computer files described in Section II below, to locate the files and copy them onto removable electronic storage media and deliver the same to the officer.

**II.  Items subject to seizure**

All subscriber and/or user information, all electronic mail, images, text messages, histories, phone and VoIP logs, contacts or friend lists, profiles, method of payment, detailed billing records, access logs, backup data, transactional data, and any other files or records associated with the following account and screen name(s):

    **1)** Facebook ID -

        **https://www.facebook.com/sal.acosta.39?pnref=friends.search**

        **user name:    Sal Acosta**

    **Facebook Account belonging to Salvador Acosta**

**III.**     The search of the data supplied by the ISP pursuant to this warrant will be conducted by the Department of Homeland Security as provided in the "Procedures For Electronically Stored Information" of the affidavit submitted in support of this search warrant and will be limited to the period of June 1, 2017 to October 1, 2017:

    a.  Communications, records, and attachments tending to discuss or establish offering, discussing, distributing or describing the bringing in, transporting, moving, encouraging, inducing, and/or concealing from detection of federally controlled substances, or the attempt or conspiracy to do such acts, in violation of 21 U.S.C. §§ 952, 960, and 963;

1

b.  Communications, records, and attachments tending to identify Salvador Acosta and any co-conspirators involved in the activities in (a) above;

c.  All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers tending to identify Salvador Acosta and any co-conspirators involved in the activities in (a) above;

d.  All past and present lists of friends created by the account tending to identify Salvador Acosta any co-conspirators involved in the activities in (a) above;

e.  All Photoprints, including all photos uploaded by that user ID and all photos uploaded by any user that have that user tagged in them to include EXIF data tending to identify evidence of offering, discussing, distributing or describing the bringing in, transporting, moving, encouraging, inducing, and/or concealing from detection of federally controlled substances, or the attempt or conspiracy to do such acts, in violation of 21 U.S.C. §§ 952, 960, and 963;

f.  All "check ins" and other location information tending to identify evidence of offering, discussing, distributing or describing the bringing in, transporting, moving, encouraging, inducing, and/or concealing from detection of federally controlled substances, or the attempt or conspiracy to do such acts, in violation of 21 U.S.C. §§ 952, 960, and 963;

g.  All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests tending to identify evidence of offering, discussing, distributing or describing the bringing in, transporting, moving, encouraging, inducing, and/or concealing from detection of federally controlled substances, or the attempt or conspiracy to do such acts, in violation of 21 U.S.C. §§ 952, 960, and 963;

h.  All email communications to include but not limited to; sent, received, deleted, drafted, and stored in the accounts listed above tending to identify evidence of offering, discussing, distributing or describing the bringing in, transporting, moving, encouraging, inducing, and/or concealing from detection of federally controlled substances, or the attempt or conspiracy to

2

do such acts, in violation of 21 U.S.C. §§ 952, 960, and 963; and

    i.   Communications, records, and attachments that provide context to any communications described above, such as electronic mail sent or received in temporal proximity to any relevant electronic mail and any electronic mail tending to identify users of the subject accounts;

which are evidence of violations of 21 U.S.C. §§ 952, 960, and 963.

3